RUMNEY AND WENTWORTH UNION SCHOOL DISTRICT *v.*
SMART & a.

An act of the general court, incorporating part of a town, known as
school district No. 5, with part of another town, into a school- dis-
trict, does not require for its validity that the legal existence of such a
district as the one indicated, should be proved, if the territory be known
by that name.

If parts of two towns be, by an act of the legislature, incorporated into
a school district, one of those towns cannot, in the exercise of its general
powers of regulating the boundaries of school districts within its limits,
dismember such district.

DEBT against Richard Smart, William W. Gibson, and
Edward R. Webster, selectmen of Rumney for the year
1844.

Pleas, 1. *Nil debit.* 2. No such corporation.

In support of the action the plaintiffs introduced an
act of the legislature to unite school district No. 5, in
Rumney, and district No. 7, in Wentworth, passed on the
2d day of July, 1842, with evidence of a meeting of the
Rumney members of the district, in 1842, for the purpose
of organizing under the charter. Upon an objection that
there was no such district in the town of Rumney at that
time, as district No. 5, having its limits legally assigned,
the plaintiffs, denying the necessity of introducing any
further evidence upon that point, nevertheless offered a
vote of the town of Rumney, passed at the annual meet-
ing in March, 1824, as follows : " *Voted,* that the selectmen
be invested with authority to divide the R. K. Morse dis-
trict." Also, a report of the selectmen, March 17, 1824,
purporting to be a return of their division of the district.
Also a record of the town in March, 1829, of an election
of a prudential committee for district No. 5, and there
was evidence that district No. 5 had existed since 1824,
with the limits mentioned in the report. It was admitted
that the defendants were selectmen of the town for 1844–5.

At the annual meeting in March, 1824, the town voted to divide the school money according to the number of scholars in each district, between three and twenty-one years of age; also voted to divide the literary and surplus monies in the same manner as the school moneys. Also voted, that in order to have the school money, surplus and literary money divided more equally, each scholar shall, in the several districts, attend school four weeks in each year, in order to have a share of the money.

It appeared in the selectmen's books that they had set
down the school tax at . . . . $329.40
Interest on the school money, . . . . 130.76

$460.16

They had entered the whole number of scholars as 366, and the number in the Rumney and Wentworth union district, 47.

Hugh B. Simpson, prudential committee of the union school district in 1844, was examined as a witness for the plaintiffs, and testified that he called on the defendants at a session of the board of selectmen in January or February, 1845, to pay him the money belonging to that district; that they proposed to give him an order on the collector for the money assigned to that district, being the amount for forty-seven scholars; that he declined receiving it, informing them that he claimed for forty-nine scholars remaining after the division of the district. He stated to them that he claimed for Mr. Nudd's son, who had attended school four weeks before the division was made, and for Mr. Foster's child; and he testified that the defendant Gibson, who took the enumeration of the scholars in that part of the town, admitted that he had made a mistake, and had not counted the latter. He further testified that he claimed for eleven scholars set off by the town from that district, on the ground that the act of the legislature of 1842, constituting that district,

deprived the town of the right to interfere with their territory, or to set off any portion of the district; and that Gibson agreed to have the order altered so as to include the one scholar omitted by mistake, and that he agreed to take it and receipt for the amount; that the selectmen refused to pay for the others, on the ground that the town had set them off to another district; that he subsequently called on Gibson for the order, and found that it had not been altered, and that he finally received it and receipted for the amount, refusing to sign any receipt which would bar the claim of the district on them, or upon the town. He testified further that he had previously forbidden the selectmen from dividing the school money in any other manner than according to the vote of the town, and from appropriating any of the money of the union district to any other, and that Gibson said they had not then divided it.

On the part of the defendants there was evidence that in March, 1844, the town voted to raise the amount of money for schools that the law requires; and that at that meeting and at a subsequent meeting, November 4, 1844, there were certain proceedings for disannexing a part of district No. 5, and annexing the same to district No. 4.

There was evidence on the part of the plaintiffs that twelve scholars lived within the limits of the part thus set off, one of whom attended school four weeks before the division was made, and the others attended after the division in district No. 4, and the teacher testified that, so far as he could judge, they were between the ages of three and twenty-one.

A verdict was taken for the plaintiffs, by consent, for the proportion of school money for thirteen scholars; judgment to be entered thereon, or the verdict to be amended, or to be set aside and judgment entered for the defendants, according to the opinion of the court upon the foregoing case.

School District *v.* Smart.

*Quincy,* for the defendants. It was incumbent upon the plaintiffs to show the extent of school district No. 5 in Rumney. This they did not do. They should have shown it by the record. The charter is predicated upon the ground of the legal existence of district No. 5, which is named in the charter, and whose existence and extent are necessary to establish and define the new district. *School District* v. *Gilman,* 3 N..H. Rep. 168 ; 7 Pick. 106 ; 4 N. H. Rep. 478 ; 4 Maine 44 ; 22 do. 566.

The town had authority to disannex a part of the district, supposing the act of the legislature to have been effectual to establish one ; and they proceeded correctly to do so. The district was formed in 1842. The Revised Statutes allowed a change to be made by the town. The union was made only for the purpose of supporting a school, and the general policy of the law is that the towns should regulate such matters. See also Rev. Stat., ch. 72, sec. 4.

*Wilcox,* for the plaintiffs. It was not necessary to prove the limits of the district by record. 1 Phil. Ev. 275 ; 10 E. 104. The parties assented to the charter. 3 T. R. 632 ; 6 do. 663.

Proof that the defendant has set out tithes is evidence that the plaintiff is entitled. 4 T. R. 366.

Giving a note to a corporation admits its existence. 6 N. H. Rep. 164. The defendants treated with the plaintiffs as a corporation, and that admits their corporate character.

The town had no right to alter the district as established by the special act. Such special act supersedes general laws.

WOODS, J. It may not be necessary to decide how far an act of the legislature is an estoppel against denying the legal existence of the quasi-corporate body named as

plaintiff in this case. It seems to be admitted that the act constituting the "Rumney and Wentworth Union School District" would be conclusive, if the existence of the 5th district in Rumney, one of the necessary, integral elements of that creation, could be established.

It was held, in *School District* v. *Aldrich,* 13 N. H. Rep. 139, that upon the trial of an issue upon the legal existence of the plaintiff, it was necessary to show that it had been created by the town in the only manner in which towns have the power by the statute to create a school district; that is, by a territorial division of the town by metes and bounds, or by distinct monuments, indicating the location of divisional lines. The capacity to sue in that case was confessedly derived from the exercise of the power of the town, and it was very apparent that the power had not been legally exercised.

In the case before us, if the question were whether such a legal entity as district No. 5, in Rumney, existed, having the ordinary powers pertaining to a school district, the creation of it would have to be established by competent proof of the due exercise of the power of the town creating it, or by proof of some other legal agency. And it may well be conceded that such proof is not furnished by this case. The report of the committee entrusted with the duty of dividing the "Morse district," in 1824, was not sufficient to establish the district, without the act of the town confirming their doings.

But there was evidence that since that time district No. 5 had existed within the limits mentioned in the report. The meaning of which is that the territory described in that report, as composing one of the districts into which the Morse district was divided, had been, since the division, known as district No. 5. This is all that is required to render the meaning and intent of the act of the general court apparent. It shows what they intended to incorporate with the district No. 7, in Wentworth, and

School District *v.* Smart.

with it to constitute the union district. For this purpose it was not necessary that what was denominated district No. 5 should have a legal existence as a school district, with the ordinary attributes and powers pertaining to such entities.

Enough therefore appears to show what was comprehended in the union district, as created by the legislature, whether it was really necessary or not, to go so far for the purpose of determining whether the act of the general court, purporting and assuming to create a body politic, had actually taken effect as intended. The plaintiffs' existence must, therefore, be admitted.

Towns have by law a general power and duty to divide their territories into school districts, and may from time to time alter the divisions that have been made. Revised Statutes, chapter 69. But this power, delegated by law, the legislature, which is supreme on such subjects, may, for good cause, resume; and, at the instance of the parties whose interests in the matter have appeared to be most immediately concerned, the legislature has, from time to time and on various occasions, exercised.

Where circumstances have appeared to demand it, the legislature has created school districts by incorporating into one, parcels of the territory of adjoining towns. This is the present case. This, it must be assumed, they have done upon mature consideration of the wants and interests of the parties interested, and in furtherance of the general purposes for which school districts have been authorized and made.

When a law for such a purpose has been duly enacted it cannot be repealed except by the enacting power. It may expire by its own terms, limiting its existence or operation to a definite period, or to the happening of some contingency expressed in those terms, or fairly to be implied by them. It is said the act creating the union district is subject to be modified by the towns, or either of

them, in the exercise of the general power and duty conferred by law to establish and alter school districts. But that proposition does not appear to be supported upon sufficient ground. The annexing together of two towns or fragments of two towns, for municipal purposes, is eminently a legislative act; and such an annexation for the purposes of supporting a school and the exercise and enjoyment · of the ordinary capacities and functions of school districts, if not an act of the same kind, partakes obviously, and in a great degree, of the character of such an act. Its effect is to except out of the operation of the law conferring general powers upon the towns in such cases, particular portions of their territory, requiring, in the opinion of the general court, special provisions, inconsistent with the exercise of that power given to the towns, or beyond the reach of it.

The portion of territory so marked off is as completely severed from the town, so far as regards the exertion of the districting power of the town, as if it had been, for all purposes whatever, severed from it and united to another, or incorporated into a new one. The town from which it is so severed cannot resume it by a fresh exertion of its power of making districts. We cannot presume that the legislature intended otherwise. It would be contrary to general principles and to ordinary procedure, for the legislature to enact a law to depend, for its continued existence, upon the act of a town, or to leave it for a town to repeal at its own will.

But in such a case as the present there would be a peculiar unfitness in permitting one of the towns to defeat an act of the general court. Not only the part of the new district which is within the limits of Rumney, but the 7th district of Wentworth, with its inhabitants, have an interest in the integrity of the new body politic, and in the preservation of the provision which the legislature has made. It would be difficult to hold, upon any view

School District *v.* Smart.

of the question that has been presented, that the act of incorporation, framed and passed upon due consideration of the reasonable wants of all the parties, was intended to be of so frail a texture as to yield to the first endeavor of one of the towns to frustrate its designs, and in effect to destroy its existence.

If the town of Rumney had the power to take away any of the territory embraced in the union district, in the exercise of its general power of regulating the school districts within its limits, it could take away all that should fall within those limits. We think there is no room for entertaining a serious doubt on this point in the case.

The verdict does not require to be amended. It appears that the money apportioned to twelve scholars residing within that part of No. 5 which the town undertook to sever and annex to No. 4, was withheld by the defendants. It also appears that in the enumeration that was made of the scholars residing in the remainder of No. 5, there was an acknowledged error of one. The plaintiffs are entitled, therefore, to recover the money apportioned to thirteen scholars, entitled by the vote of the town, by reason of having attended school four weeks, to be estimated in settling the share to be assigned to the district. There must, therefore, be

*Judgment on the verdict.*